FILED
2011 AUG 10 A 11: 20
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ORIGINAL

BY FAX

1   David C. Parisi (SBN 162248)
    dcparisi@parisihavens.com
2   Suzanne Havens Beckman (SBN 188814)
    shavens@parisihavens.com
3   Azita Moradmand (SBN 260271)
    amoradmand@parisihavens.com
4   PARISI & HAVENS LLP
    15233 Valleyheart Drive
5   Sherman Oaks, California 91403
    Telephone: (818) 990-1299
6   Facsimile: (818) 501-7852
7
8   Michael J. McMorrow (*not admitted*)
    mjmcmorrow@edelson.com
9   John C. Ochoa (*not admitted*)
    jochoa@edelson.com
10  EDELSON MCGUIRE LLC
    350 North LaSalle Street, Suite 1300
11  Chicago, Illinois  60654
    Telephone: (312) 589-6370
12  Facsimile: (312) 589-5378
13
14  ATTORNEYS FOR PLAINTIFF
15              IN THE UNITED STATES DISTRICT COURT
16          FOR THE NORTHERN DISTRICT OF CALIFORNIA
17
18  DAVID WOLK and BARBARA WOLK,     ) Case No. CV 11 3916
    individually and on behalf of a class of  )
19  similarly situated individuals,           ) CLASS ACTION COMPLAINT
20                                            )
                   Plaintiffs,                 ) DEMAND FOR JURY TRIAL
21  v.                                        )
                                              )
22  VERIZON CALIFORNIA, INC., a               )
    California corporation, ENHANCED          )
23  SERVICES BILLING INC., a Texas            )
    corporation, and DOES 1-10, inclusive,    )
24                                            )
                                              )
25                 Defendants.                )
26
27
28

## CLASS ACTION COMPLAINT

Plaintiffs David and Barbara Wolk ("Wolks" or "Plaintiffs") bring this class action complaint against Defendants Verizon California, Inc. ("Verizon"), Enhanced Services Billing, Inc. ("ESBI"), and fictitious Doe Defendants ("Does") based upon Defendants' practice of charging telephone subscribers for unauthorized products and services.

### PARTIES

1.      Plaintiffs David Wolk and Barbara Wolk are family members and are domiciled in California. Plaintiff Barbara Wolk is the authorized user of the telephone number that was subjected to the offending charges alleged herein and Plaintiff David Wolk is the account holder of the family telephone plan through which both Plaintiffs receive telephone service.

2.      Defendant Verizon is a large conglomerate, which, by itself and through its numerous subsidiary corporations, provides telephone services to consumers throughout the nation. Verizon is a California corporation with its principal place of business in California. It does business throughout the State of California and in this District, and operates in California as an LEC, as a long-distance service provider, and as a wireless phone provider.

3.      Defendant ESBI is a billing processor, or "aggregator," for numerous telephonic services provided by numerous third parties and billed to customers through local landline telephone providers, also known as local exchange carriers ("LECs"). ESBI is a Texas corporation with its headquarters in California. It does business throughout the State of California and this District.

4.      Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 50, inclusive, and therefore, sue such

1    defendants by such fictitious names. Plaintiffs will seek leave to amend this

2    Complaint to allege the true names and capacities of said fictitiously named

3    defendants when their true names and capacities have been ascertained. Plaintiffs are

4    informed and believe and based thereon allege that each of the fictitiously named Doe

5    defendants is legally responsible in some manner for the events and occurrences

6    alleged herein, and for the damages suffered by plaintiffs.

7        5.      Plaintiffs are informed and believe and based thereon allege that all

8    defendants, including the fictitious Doe defendants, were at all relevant times acting

9    as actual agents, conspirators, ostensible agents, partners and/or joint venturers and

10   employees of all other defendants, and that all acts alleged herein occurred within the

11   course and scope of said agency, employment, partnership, and joint venture,

12   conspiracy or enterprise, and with the express and/or implied permission, knowledge,

13   consent, authorization and ratification of their co-defendants; however, each of these

14   allegations are deemed alternative theories whenever not doing so would result in a

15   contradiction with the other allegations.

16       6.      All defendants, including Does 1 through 50, are collectively referred to

17   as "Defendants."

18                        **JURISDICTION AND VENUE**

19       7.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331

20   because this action arises under the laws of the United States, specifically the

21   Racketeer Influenced Corrupt Organizations Act, 18 U.S.C §§ 1961-1968.

22       8.      The Court has supplemental jurisdiction over Plaintiffs' State law

23   claims pursuant to 28 U.S.C. § 1367 because these claims are part of the same case or

24   controversy as Plaintiffs' claims falling under original jurisdiction.

25

26

27

28

9.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because a substantial part of the events at issue in this case occurred in this District.

### INTRA-DISTRICT ASSIGNMENT: SAN JOSE

10.      Pursuant to local Rules 3-2(c) and 3-5(b), a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Santa Clara County, where Plaintiffs are located, and this case should be assigned to the San Jose division pursuant to Local Rule 3-2(e).

### CONDUCT COMPLAINED OF

11.      Today's telephones are far more advanced than standard, land-based telephones of the past; instead of mere tools for sending and receiving calls, modern telephones have increasingly been used to transact commerce.  Much like a common credit card, such ability permits telephone subscribers to purchase a vast variety of products or services provided by a rapidly growing industry of third-party vendors.

12.      Such services can range from weather and traffic reports to sports scores, stock tips, and jokes; they can also be used to access radio and television services. These additional products and services are collectively referred to in the telecommunications industry as "premium content."  For landline telephone subscribers, premium content ranges from web hosting products, to diet monitoring services, to email accounts and to office supplies.

13.      Many premium content third-party vendors do not distinguish between mobile and landline premium content other than in marketing materials.  The third-party vendors frequently elect instead, for cost efficiency purposes, to consolidate and streamline into a single operation the creation and billing of such products and services.  Despite the existence of such a centralized operation, such companies maintain the appearance of disparate and unrelated activities through numerous

1   subsidiaries and other affiliates so as to conceal from both the public and government

2   agencies the breadth of its fraudulent conduct.

3       14.     While third-party premium content providers create and often market

4   premium content themselves, telephone subscribers are not billed directly by these

5   premium content providers. In most cases, these premium content providers lack

6   access to the LEC and cellular providers who have the ability to issue bills to

7   customers. Instead, premium content providers partner with middlemen known as

8   "aggregators," such as Defendant ESBI. These aggregators provide a conduit

9   between the numerous, diverse and comparatively small premium content providers

10  and the large LEC telephone carriers, such as Defendant Verizon, in order to facilitate

11  the premium content providers' ability to: (i) use a carrier's network to deliver their

12  services to that carrier's subscribers; and/or (ii) use a carrier's billing system to collect

13  payment for their premium content services from that carrier's subscribers. In return,

14  the aggregators and the carriers each keep a percentage of the premium content

15  charges.

16      15.     The premium content industry—which involves both landline and

17  mobile telephone accounts—generates vast amounts of revenue for all parties

18  involved: the premium content providers, aggregators such as Defendant ESBI, and

19  the telephone carriers such as Defendant Verizon. However, not all of this revenue

20  has been legitimately and lawfully collected. The primary sources of the problem that

21  have plagued the industry for years are the misleading marketing representations

22  made by unscrupulous premium content providers and/or their marketing agents, as

23  well as the lack of commercial viability of many of these premium content providers'

24  "services."

25      16.     While many of the largest participants in the cell phone premium

26  content industry have agreed to implement corrective measures and make consumers

27

28
_____
Class Action Complaint
5

1   whole through nationwide settlements, including AT&T Mobility, LLC, participants

2   in the landline side of the premium content industry have refused to make such

3   amends, despite landline premium content having far higher rate of unauthorized

4   charges. Indeed, a government investigation of one such landline premium content

5   industry participant, Snackable Media, LLC, f/k/a Nextweb Media, LLC d/b/a Email

6   Discounts, LLC ("Snackable"), found that over ninety (90) percent of its charges to

7   landline telephone accounts were unauthorized by the billed party. Despite such

8   revelations, Defendants ESBI and Verizon continue to process such charges to

9   consumers' telephone accounts unabated. Indeed, Snackable entered into a

10  nationwide class action settlement with consumers which was approved in an Illinois

11  court earlier this year. *Ryan v. NextWeb Media, LLC, n/k/a, Snackable Media, LLC*,

12  No. 08 CH 31842 (Cir. Ct. Cook Cnty. Ill., May 13, 2011) (order granting final

13  approval).

14      17.   Defendants' methods for determining authorization continue to be

15  highly problematic as they contract on behalf of themselves and affiliated companies

16  with marketers who frequently depend on little more than information readily

17  available through the public domain, such as one's name and telephone number. By

18  comparison, a consumer who uses a check must sign it to prove he or she authorizes

19  payment. Many merchants also require check-users to show an additional form of

20  identification such as a drivers' license or state-issued ID. An issuing bank then uses

21  that signature to verify whether the consumer actually authorized payment. Similarly,

22  a consumer who uses a credit card must provide, at a minimum, both the credit card

23  number and date of expiration; more often than not a credit card user must also sign a

24  receipt or, if the transaction takes place online, provide his or her three-digit credit

25  card security code, the zip code of the card's billing address and a matching street

26  address. Credit card providers also have additional levels of security in place that

27

28

1   analyze a consumer's particular transaction, using the transaction's similarity to that

2   consumer's previous transactions as a way to determine how likely it is a particular

3   transaction may have been the result of fraud or theft.

4          18.    In stark contrast, a premium content provider can cause any consumer to

5   be billed for premium content services once it has that consumer's telephone number,

6   even if the consumer never agreed to purchase its services or was never informed

7   about the charge for such services.  Premium content providers frequently are

8   required only to provide to an aggregator such as ESBI a landline telephone number

9   and an amount to charge.  Next, the aggregator simply relays that information to the

10  carrier, such as Verizon, to place a charge on the telephone bill associated with that

11  number.

12         19.    Indeed, when confronted by consumers complaining about unauthorized

13  premium content charges, many premium content providers and aggregators such as

14  ESBI attempt to create the appearance that a charge was authorized by producing a

15  "customer's" personal demographic information, such as a street address or mother's

16  maiden name.  Much of this information, however, is acquired in bulk from vendors

17  who assemble it from publicly available sources rather than legitimately through the

18  acquiescence of the customers themselves.  These companies then use this

19  information to process charges to consumers' telephone bills.  If consumers protest,

20  content providers and aggregators will at times relent and process a refund, employing

21  a "charge first, refund later, if at all" approach to their business.  In spite of the

22  knowledge that large numbers of people are billed for services they neither wanted

23  nor authorized each of the four parties involved—the marketer, the premium content

24  provider, the aggregator, and the carrier—maintain and are incentivized to do so by

25  their revenue share of each charge.

26

27

28

1    20.    This problem is exacerbated by the fact that charges for premium

2  content services are often not clearly identified on subscribers' bills, thereby making

3  it impossible for subscribers to identify the origin or nature of the charge, or to

4  distinguish it from the numerous line-item charges and fees that appear on the average

5  consumer's telephone bill.  In addition, because charges for premium content services

6  are sometimes just a few dollars, subscribers who use automatic bill-paying services

7  may never even notice such charges.

8    21.    Defendants could easily stop this system by requiring their industry

9  partners to provide some form of reliable proof that a subscriber did, in fact, purchase

10  such premium content.  One way to do this would be by providing each of its

11  subscribers a unique code to use whenever making premium content purchases, and

12  by requiring all third parties to provide that same code to Defendant ESBI and other

13  aggregators before processing billing requests.  In addition, Defendants could provide

14  the following on each subscriber's bill: (1) the party responsible for premium content

15  service charges; (2) a description of the premium content service being charged for;

16  (3) the method in which the consumer allegedly purchased such service (e.g., via the

17  internet, mail, or in-person); (4) the date the consumer allegedly purchased the

18  service; and (5) the methods and contact information necessary to cancel the service.

19    22.    Despite Verizon, ESBI, and the other unnamed Defendants' knowledge

20  of their fraudulent conduct and their ability to stop their unauthorized billing

21  practices, they have purposefully maintained a system without any checks or

22  safeguards because it is a source of significant profit to them.  Given the growth of the

23  premium content services industry and the increasing opportunities subscribers have

24  to use their telephones as credit cards, the damage Defendants have caused thus far

25  pales in comparison to the damage that will occur if the flaws in this system are not

26  corrected.

27

28

23. Defendants' continued conduct in billing telephone subscribers for premium content, combined with their failure to implement a billing system that would ensure only consumers who did, in fact, authorize charges for such services were billed for them, is a deliberate strategy by Defendants to unlawfully collect small sums of money from a large number of consumers.

24. Defendant Verizon acts in concert with Defendant ESBI and other yet-unnamed Defendants with the common purpose of defrauding telephone customers by billing them for services they never authorized, and then collecting and sharing in these profits.

25. Each Defendant plays a different role in this common scheme to defraud telephone customers:

    a. The third-party premium content providers (including yet-named Doe Defendants) obtain telephone numbers and other personal information of Verizon telephone subscribers. These content providers do not obtain consent from Verizon customers to receive premium content services, and to be billed for these services.

    b. Defendant ESBI collects this information from the premium content providers and transmits it to Defendant Verizon. ESBI does not attempt to ascertain whether the telephone subscribers have actually authorized the premium content services. On the contrary, ESBI maintains procedures to make it appear that telephone customers have consented to the premium content. These procedures include telling telephone customers who call to complain that they consented to the charges, and presenting as "proof" of this consent in the form of personal demographic information of the customer. ESBI knows that the customers have not consented to the charges.

1         c. Defendant Verizon receives customer lists from aggregators such as

2           ESBI and places the fraudulent charges on the telephone customer's

3           Verizon telephone bill with the knowledge that the customer never

4           consented to the charges. Verizon also has knowledge that the other

5           Defendants in this case do not maintain safeguards to ensure that only

6           customers who consented to receive premium content are charged.

7           Verizon does not attempt to determine if these customers validly

8           consented to the charges for premium content. Instead, the telephone

9           bills containing the fraudulent charges are then sent to Verizon

10           customers. The unauthorized charges are not clearly identified on the

11           bills, making it more difficult for customers to recognize the charges.

12    26.    The acts alleged above are all done for the same purpose: to bill

13 telephone customers for services they never consented to or authorized and then to

14 collect and share in the profits.

15    27.    Each defendant acting alone would be unable to complete this scheme.

16 Verizon could not bill customers without obtaining the customers' personal

17 information from ESBI, and ESBI could not pass along this information without first

18 receiving it from third-party content providers. All Defendants' rely on the fact that

19 none of them actually obtain consent from the customers, and also that none insist that

20 valid consent be shown before billing a customer. Each Defendant depends on the

21 other in order to engage in the fraudulent conduct and ultimately collect the ill-gotten

22 gains.

23           **THE FACTS RELATING TO NAMED PLAINTIFFS**

24    28.    During 2002, Plaintiffs David and Barbara Wolk acquired new

25 telephone service for their personal use from Defendant Verizon.

26

27

28

1       29.    Beginning in or about 2009, Plaintiffs' telephone account was charged

2  by Defendants for unwanted premium content services.

3       30.    At no time did Plaintiffs authorize the purchase of these products and

4  services from Defendants.

5       31.    During the relevant time period, Defendants caused Plaintiffs to be

6  charged service fees in the amount of several dollars for such premium content

7  charges.

8       32.    At no time did Plaintiffs authorize Defendants or anyone else to bill

9  them for these charges and at no time did Defendants verify Plaintiffs' purported

10 authorization of these charges.

11      33.    Defendants have yet to provide a full refund of the unauthorized charges

12 consisting of the premium content charges, taxes, back interest, lost time, and/or

13 attorneys' fees. Defendants have also failed to implement adequate procedures to

14 ensure that such unauthorized charges would not appear in future billing periods

15 and/or an assurance that such unauthorized charges would not appear in future billing

16 periods.

17                          **CLASS ALLEGATIONS**

18      34.    Plaintiffs bring this action on behalf of themselves and a class and a

19 subclass of similarly situated individuals (the "Classes"), defined as follows:

20        (A)    A class ("Class") of all telephone subscribers nationwide who suffered

21             losses or damages as a result of ESBI billing for premium content products and

22             services not authorized by the subscriber. Excluded from the class are

23             Defendants and any employee of Defendants, as well as all employees of this

24             Court, including, but not limited to, Judges, Magistrate Judges, clerks and court

25             staff and personnel of the United States District Courts of the Northern District

26             of California, the United States Court of Appeals for the Ninth Circuit and the

27

28

United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit. Also excluded from the class are any attorneys or other employees of any law firms hired, retained and/or appointed by or on behalf of the named Plaintiffs to represent the named Plaintiffs and any/or any proposed class members or proposed class in this lawsuit.

(B)     A subclass ("Subclass") of all Verizon landline telephone subscribers in the state of California who suffered losses or damages as a result of ESBI billing for premium content products and services not authorized by the subscriber. Excluded from the class are Defendants and any employee of Defendants, as well as all employees of this Court, including, but not limited to, Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Courts of the Northern District of California, the United States Court of Appeals for the Ninth Circuit and the United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit. Also excluded from the class are any attorneys or other employees of any law firms hired, retained and/or appointed by or on behalf of the named Plaintiffs to represent the named Plaintiffs and any/or any proposed class members or proposed class in this lawsuit.

35.     The Classes consist of thousands of individuals and other entities, making joinder impractical.

36.     Common questions of law and fact exist as to all members of the Classes and such questions predominate over questions affecting Plaintiff or

1    individual members. Common questions for the Classes include but are not limited to

2    the following:

3

4            (a) Whether Defendants' conduct violates 18 U.S.C. § 1962(c).

5            (b) Whether each of the Defendants is a corporate "person" under 18

6    U.S.C. § 1961(4).

7            (c) Whether Defendants' conduct violates 18 U.S.C. § 1962(d).

8            (d) Whether Defendants' conduct constitutes wire fraud or mail fraud

9    under, respectively, 18 U.S.C. §§ 1341 and 1343.

10           (e) Whether an enterprise exists that affects interstate commerce.

11           (f) Whether Defendants have been associated with the enterprise.

12           (g) Whether the Defendants participated in the conduct of the

13    enterprise's affairs.

14           (h) Whether Defendants have engaged in an ongoing, open-ended

15    scheme, artifice and pattern of racketeering.

16           (i) Whether the entities forming the enterprise conduct lawful business

17    activity unrelated to the illegal acts that constitute the pattern of racketeering.

18           (j)      Whether ESBI has unjustly received money belonging to

19    Plaintiffs and the Class and Subclass, and whether under principles of equity

20    and good conscience, they should not be permitted to retain it.

21           (k)      Whether ESBI has tortiously interfered with contracts between

22    Plaintiffs and the Class and Subclass, on the one hand, and their telephone

23    carriers, including but not limited to Verizon, on the other hand, by causing

24    them to be charged for products and services by their carriers that were

25    unauthorized.

26

27

28

Common questions for the Subclass include but are not limited to the following:

      (k)     Whether Verizon's conduct constituted a breach of contract.

      (l)     Whether Verizon's conduct violated section 2890 of California's Public Utilities Code.

37.     Plaintiffs will fairly and adequately protect the interests of the Classes, their claims are typical of the claims of the members of the Classes, and they have retained counsel competent and experienced in similar class action litigation.

38.     A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the respective Classes are impracticable, and (b) many members of the Classes cannot vindicate their rights by individual lawsuits because their damages are small relative to the burden and expense of litigating individual actions.

## FIRST CAUSE OF ACTION
### (Violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* on behalf of the Class and against all Defendants)

39.     Plaintiffs incorporate by reference the foregoing allegations.

40.     18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern or racketeering activity or collection of unlawful debt."

41.     18 U.S.C. § 1964(c) creates a private right of action for any person injured in his business or property by reason of violation of 18 U.S.C. § 1962, and

1    provides for threefold damages sustained as well as recovery for the cost of the suit,

2    including reasonable attorneys fees.

3        42.    Defendants Verizon, ESBI, and the unnamed Doe Defendants are all

4    "persons" as defined by 18 U.S.C. § 1961(3) because they are all corporations —

5    entities capable of holding legal interest in property.

6        43.    Plaintiffs, and the members of the putative class, are "persons" as

7    defined by 18 U.S.C. § 1961(3).

8        44.    As described in the Complaint, Defendants Verizon, ESBI, and the

9    unnamed Doe Defendants are all "associated in fact" such that they constitute an

10   "Enterprise" as defined by 18 U.S.C. § 1961(4).

11       45.    As described in the Complaint, Defendants Verizon and ESBI engaged

12   in a "pattern of racketeering activity" by committing at least two acts of racketeering

13   activity after the effective date of RICO and also within ten years of each individual

14   act. Specifically, Defendants actions described in the Complaint violate the following

15   provisions:

16       46.    The federal wire fraud statute, 18 U.S.C. § 1343, which is identified by

17   18 U.S.C. §1961(1) as an indictable predicate act for purposes of racketeering.  It

18   provides in relevant part:

19           Whoever, having devised or intending to devise any scheme or artifice
             to defraud, or for obtaining money or property by means of false or
20           fraudulent pretenses, representations, or promises, transmits or causes to
             be transmitted by means of wire, radio, or television communication in
21           interstate or foreign commerce, any writings, signs, signals, pictures, or
             sounds for the purpose of executing such scheme or artifice, shall be
22           fined under this title or imprisoned not more than 20 years, or both.

23   18 U.S.C.A. § 1343 (West 2010)

24       47.    The federal mail fraud statute, 18 U.S.C. § 1341, which is identified by

25   18 U.S.C. §1961(1) as an indictable predicate act for purposes of racketeering.  It

26   provides in relevant part:

27

28

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341 (West 2010).

### The "Associated in Fact Enterprise"

48.    The "Associated in Fact Enterprise" consists of Defendant Verizon, Defendant ESBI, and the yet-unnamed Doe Defendants. Every member of the Enterprise participated in the process of obtaining, transmitting, billing, and collecting fraudulent, unauthorized charges on Verizon's telephone bills to the plaintiffs and members of the Classes. The Enterprise committed these acts in a coordinated fashion for the common purpose of defrauding Verizon telephone customers and sharing in the profits of this fraud. In addition to these unlawful purposes, the Enterprise also engages in this same billing activity to conduct legitimate and lawful billing and collection services for proper and authorized charges for Verizon's services and third party billing services.

49.    Plaintiffs are informed and believe that each member of the Enterprise played a role and acted in mutual reliance for the common purpose of obtaining, transmitting, billing and collecting fraudulent, unauthorized charges on Verizon's bills.

1

## The Pattern of Racketeering

2    50.    Beginning at least four years prior to the filing of this Complaint,

3   Verizon adopted and implemented a uniform, nationwide scheme to defraud its

4   customers by billing and collecting a percentage of fraudulent and unauthorized

5   charges from its customers. For the purposes of implementing this fraudulent scheme,

6   Verizon associated itself and entered into nearly identical contractual relationships

7   with billing aggregators such as Defendant ESBI as well as third party content

8   providers. Verizon allows Defendant ESBI to submit fraudulent charges to Verizon

9   customers, who in turn collects the names of customers to fraudulently bill from third-

10  party content providers.

11    51.    Pursuant to this scheme, Defendant Verizon has designed and

12  implemented one common, uniform nationwide scheme to defraud its customers.

13  Verizon's contracts with the billing aggregators, such as ESBI, and the billing and

14  collection systems used for purposes of implementing the nationwide fraudulent

15  scheme, is one common, uniform, nearly identical system of provisions and rules used

16  in virtually an identical manner in each state nationwide in which Verizon provides

17  local telephone services.

18    52.    Within the past four years, Verizon has billed and collected millions of

19  dollars in unauthorized charges pursuant to the above-described fraudulent scheme to

20  bill and collect unauthorized charges from its customers.

21    53.    Within the past four years, Verizon has knowingly, intentionally, and/or

22  recklessly engaged in an ongoing, pattern of racketeering activity under 18 U.S.C. §

23  1962(c) by committing the predicate acts of wire and mail fraud by knowingly and

24  intentionally implementing a scheme to bill and collect millions of dollars of

25  unauthorized charges from its customers.

26

27

28

1    54.    Verizon, having devised or intending to devise a scheme or artifice to

2    defraud its customers, for the purpose of executing such scheme or artifice or

3    attempting to do so, placed and/or knowingly cause to be placed in a post office or

4    authorized depository for mail matter, documents and/or packages to be sent or

5    delivered by the Postal Service or private or commercial interstate carrier, and/or

6    received from these entities such documents and/or packages, including but not

7    limited to (1) Verizon telephone bills mailed to Verizon telephone customers that

8    contained fraudulent, unauthorized charges, (2) the receipt of payments mailed by

9    Verizon telephone customers for fraudulent, unauthorized third-party charges, (3)

10   billing and collection agreements between Verizon and the billing aggregators and/or

11   third party content providers, and (4) correspondence regarding the foregoing.

12    55.    Verizon, having devised or intending to devise a scheme or artifice to

13   defraud its customers, for the purpose of obtaining money from the customers by

14   means of false or fraudulent pretenses, representations, or promises as to fraudulent

15   and unauthorized charges on Verizon telephone bills, transmitted or caused to be

16   transmitted by means of wire communication in interstate or foreign commerce,

17   writings, signs, signals, and pictures, for the purpose of executing such scheme or

18   artifice, including by the (1) transmission of phony, unauthorized charges by third-

19   party providers to billing aggregators for the purposes of ultimately being billed and

20   collected by Verizon pursuant to the scheme; (2) transmission of phony, unauthorized

21   charges by billing aggregators such as Defendant ESBI to Verizon for purposes of

22   ultimately being billed and collected by Verizon pursuant to the scheme; (3) by

23   transmitting e-mail communications relating to the process of obtaining, transmitting,

24   billing and collecting fraudulent, unauthorized charges on Verizon's bills to members

25   of the Class; (4) by communicating with members of the Class via telephone wire and

26   representing to them that the fraudulent charges were consented to when in fact they

27

28

were not; and (5) by collecting funds from customers via electronic fund transfers or electronic communications with the consumer's bank or credit card institution and transmitting payment from Verizon to ESBI, and by transmitting payments from ESBI to the third-party content providers.

56.     As part of this pattern of racketeering, Verizon has used the Enterprise to increase profits to the detriment of Verizon customers residing in the 26 states in the United States where Verizon operates its unlawful scheme.

57.     The interstate commerce requirement of a RICO claim is satisfied here because the racketeering claims alleged in this Complaint arise out of, and are based on, Defendant's use of the Internet and agreements with entities in other states in conjunction with the process of obtaining, transmitting, billing and collecting fraudulent charges on Verizon's bills to the members of the Class, in furtherance of the racketeering scheme as alleged in this Complaint.

58.     The pattern of racketeering activity described in this Complaint is continuous, ongoing, and will continue unless Defendants are enjoined from continuing these racketeering activities.

**Injury to Plaintiffs and Class Members in their Business or Property from the Pattern of Racketeering Activity**

59.     Plaintiffs and the putative class members are the only direct victims of Verizon's wrongful and unlawful conduct. Plaintiffs and the class members directly paid Verizon money for an unauthorized charge, including money that was in the custody or control of a financial institution.

60.     Plaintiffs and the putative class were injured because they were billed for and paid for a service that they did not authorize, and because they were the primary and intended victims of the scheme to defraud. It was a foreseeable and natural consequence of Verizon's scheme that customers would pay for the unauthorized charges. There are no independent factors that account for Plaintiffs'

and the putative class members' economic injuries. There is no risk of duplicative recoveries by Plaintiffs and the putative class.

61.     There are no other, more immediate victims better situated to sue for the RICO violations at issue, given that Plaintiffs and the putative class members were billed for and paid the unauthorized charges from Verizon.

62.     Plaintiffs were the victim of the scheme to defraud customers by being billed for and paying for unauthorized charges. Numerous other Verizon customers were exposed to the same scheme to defraud.

63.     As a direct and proximate result of Defendants' scheme, Plaintiffs and the putative class members have lost money comprised of the amounts paid for unauthorized charges, in an amount to be calculated with greater accuracy based on information in the Defendants' records.

64.     As a direct and proximate result of the racketeering activities described in the Complaint, Plaintiffs and the putative class members are entitled to recover treble damages for the injuries they have sustained, according to proof, restitution, as well as costs of the lawsuit and reasonable attorneys' fees under 18 U.S.C. § 1964(c).

65.     As a direct and proximate result of the racketeering activities described in this Complaint, Plaintiffs, on behalf of themselves and the putative class members, are entitled to an Order, under 18 U.S.C. § 1964(a) enjoining and prohibiting Defendants from engaging in the unlawful conduct that the Enterprise has engaged in.

## SECOND CAUSE OF ACTION
**(Conspiracy to Violate the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* on behalf of the Class and against all Defendants)**

66.     Plaintiffs incorporate by reference the foregoing allegations.

67.     Defendants Verizon, ESBI, and the unnamed Doe Defendants have conspired with each other to carry out the Enterprise pleaded above and to violate 18

1    U.S.C. § 1962(c), as alleged above, in violation of 18 U.S.C. § 1962(d).  Each has

2    aided, assisted, and abetted the others in carrying out and attempting to carry out the

3    Enterprise.

4        68.    As alleged above, each Defendant by words or action manifested an

5    agreement to commit two or more predicate acts in furtherance of the common

6    purpose of the RICO Enterprise.

7        69.    As alleged above, each Defendant knew of the conspiracy's goals and

8    agreed to facilitate and/or to aid, assist and abet the others in carrying out the

9    conspiracy by, among other things, two predicate acts of mail and/or wire fraud.

10                        **THIRD CAUSE OF ACTION**
                    **(Unauthorized Telephone Charges In Violation Of**
11    **California Public Utilities Code § 2890 on behalf of the Subclass against all**
12                                **Defendants)**

13       70.    Plaintiffs incorporate by reference the foregoing allegations.

14       71.    California Public Utilities Code § 2106 provides aggrieved persons the

15   following private right of action:

16           "Any public utility which does, causes to be done, or permits
             any act, matter, or thing prohibited or declared unlawful, or
17           which omits to do any act, matter, or thing required to be
             done, either by the Constitution, any law of this State, or any
18           order or decision of the commission, shall be liable to the
             persons or corporations affected thereby for all loss, damages,
19           or injury caused thereby or resulting therefrom.  If the court
             finds that the act or omission was willful, it may, in addition
20           to the actual damages, award exemplary damages.  An action
             to recover for such loss, damage, or injury may be brought in
21           any court of competent jurisdiction by any corporation or
             person."
22
23       72.    In an effort to deter the unlawful practice of "cramming," *i.e.*, the

24   placing of unauthorized charges on telephone bills, the California legislature enacted

25   Public Utilities Code section 2890, which provides, in pertinent part, as follows:

26           (a) A telephone bill may only contain charges for
             products or services, the purchase of which the subscriber has
27           authorized.

28
                                Class Action Complaint
                                         21

(b) When a person or corporation obtains a written order for a product or service, the written order shall be a separate document from any solicitation material. The sole purpose of the document is to explain the nature and extent of the transaction. Written orders and written solicitation materials shall be unambiguous, legible, and in a minimum 10 point type. Written or oral solicitation materials used to obtain an order for a product or service shall be in the same language as the written order. Written orders may not be used as entry forms for sweepstakes, contests, or any other program that offers prizes or gifts.

(d) (1) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill. A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

(C) Establish, maintain, and staff a toll free telephone number to respond to questions or disputes about its charges and to provide the appropriate addresses to which written questions or complaints may be sent. The person, corporation, or billing agent that generates a charge may also contract with a third-

party, including, but not limited to, the billing telephone corporation, to provide that service on behalf of the person, corporation or billing agent.

73.     Each of the Defendants violated section 2890 by virtue of their conduct alleged above, including their billing for products or services, the purchase of which Plaintiffs never authorized, thereby causing Plaintiffs and the members of the Subclass to suffer loss, damage, and injury.

74.     Plaintiffs and the Subclass are entitled to actual damages pursuant to Public Utilities Code section 2106. Plaintiffs and the Subclass are further entitled to exemplary damages to the extent the evidence shows that Defendants' violations were willful.

## FOURTH CAUSE OF ACTION
### (Restitution/Unjust Enrichment on behalf of the Class and Subclass as to all Defendants)

75.     Plaintiffs incorporate by reference the foregoing allegations.

76.     Plaintiffs and the Classes have conferred a benefit upon Defendants. As a result of their billing and collecting significant sums of money for unauthorized premium content charges, Defendants have received and retained money belonging to Plaintiffs and the Classes.

77.     Defendants appreciate or have knowledge of said benefit.

78.     Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiffs and the respective Classes, which they have unjustly received as a result of their unlawful actions.

79.     Plaintiffs and the Class and Subclass have suffered loss as a direct result of Defendants' conduct.

## FIFTH CAUSE OF ACTION
### (Breach of Contract on behalf of the Subclass as to all DOES and Verizon)

80.     Plaintiffs incorporate by reference the foregoing allegations.

81. Plaintiffs and the Subclass entered into substantially identical Service Agreements with Defendant Verizon whereby Plaintiffs and the Subclass agreed to pay an agreed upon sum in return for Defendant Verizon's activation of Plaintiffs' telephone accounts and Defendant's provision of communication services to Plaintiff and the Subclass.

82. Defendant Verizon expressly and/or impliedly agreed to bill Plaintiffs and the Subclass only for products or services the purchase of which they had authorized.

83. Defendant Verizon breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiffs and the Subclass for services, the purchase of which was never authorized.

84. The aforementioned breach of contract has proximately caused the Plaintiffs and the Subclass economic injury and other damages.

## SIXTH CAUSE OF ACTION
### (Tortious Interference with a Contract on behalf of both Class and Subclass as to ESBI and all DOES)

85. Plaintiffs incorporate by reference the foregoing allegations.

86. Plaintiffs and the respective Class and Subclass had contractual relationships with their telephone carriers, including but not limited to Defendant Verizon, whereby they agreed to pay a certain sum of money in exchange for activation of their telephone accounts and their carriers' promises to provide various communications and related services to Plaintiffs and the other members of the Class and Subclass, and to bill Plaintiffs and the members of the Class and Subclass for only products or services the purchase of which they had authorized, in accordance with California law.

87. Defendants ESBI and Does knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

88.     Defendants ESBI and Does intentionally interfered with said contractual relationships through improper motives and/or means by knowingly and/or recklessly continually causing unauthorized charges to be placed on the telephone bills of telephone owners across the state of California in violation of California law.

89.     Plaintiff and the other members of the Class and Subclass suffered loss as a direct result of Defendants ESBI and Does' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs David and Barbara Wolk, on behalf of themselves and the Class and Subclass, prays for the following relief:

a)     Certify this case as a class action on behalf of the Class and Subclass defined above, appoint David and Barbara Wolk as Class Representatives, and appoint the undersigned as lead counsel;

b)     Award Plaintiffs and the Class threefold damages for all economic, monetary, actual, consequential, and compensatory damages caused by their conduct, as well as costs and reasonable attorneys' fees, under 18 U.S.C. § 1964(c).

c)     Declare that Defendants' actions, as set out above, violate the California Public Utilities Code § 2890;

d)     Declare Defendants' actions, as set out above, constitute unjust enrichment and tortious interference with a contract;

e)     Enter judgment against Defendants for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if such conduct is proved willful, award Plaintiffs and both the Class and Subclass exemplary damages;

1    f)    Award Plaintiffs and the Class and Subclass reasonable costs and

2          attorneys' fees;

3    g)    Award Plaintiffs and the Class and Subclass pre- and post-

4          judgment interest;

5    h)    Enter judgment for injunctive and/or declaratory relief as is

6          necessary to protect the interests of Plaintiffs and the Class and

7          Subclass; and

8    i)    Award such other and further relief as equity and justice may

9          require.

10                                  Respectfully submitted,

11

Dated: August 9, 2011              PARISI & HAVENS LLP
12

13

14                                  By:_____
                                        David C. Parisi
15                                      Suzanne Havens Beckman
                                        Azita Moradmand
16                                      Attorneys for DAVID WOLK and
                                        BARBARA WOLK, individually and
17                                      on behalf of a Class of similarly
                                        situated individuals
18

19

20

21

22

23

24

25

26

27

28

1

**JURY DEMAND**

2

Plaintiff request trial by jury of all claims that can be so tried.

3

Respectfully submitted,

4

Dated: August 9, 2011

PARISI & HAVENS LLP

5

6

By: _____

7

David C. Parisi

8

Suzanne Havens Beckman

Azita Moradmand

9

Attorneys for DAVID WOLK and

BARBARA WOLK, individually and

10

on behalf of a Class of similarly

situated individuals

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28